**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-25646-BLOOM/Elfenbein**

ALDO RODRIGUEZ LORENTE,

      Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES;
U.S. DEPT. OF HOMELAND SECURITY;
KRISTI NOEM, Secretary, U.S. Department of
Homeland Security; EILEEN LOPEZ TOME, District Director,
Miami District Office, U.S. Citizenship and Immigration Services;
JOSEPH B. EDLOW, Director, U.S. Citizenship and Immigration Services,

      Defendants.

_____/

**OMBINUS ORDER ON MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Amended Complaint and/or Alternatively Stay Proceedings and Administratively Close Case, ECF No. [12] ("Motion to Dismiss"). Plaintiff Aldo Rodriguez Lorente ("Plaintiff") filed a Response in Opposition, ECF No. [13], to which Defendants filed a Reply, ECF No. [14]. Also before the Court is Plaintiff's Motion for a Preliminary Injunction ("Motion for PI"), ECF No. [11]. Defendants filed a Response in Opposition, ECF No. [15], and Plaintiff filed a Reply, ECF No. [16]. The Court has reviewed the Motion to Dismiss and Motion for PI, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the Motion to Dismiss is granted in part and denied in part, and the Motion for PI is granted in part and denied in part.

## I.   BACKGROUND

### A.  Statutory and Regulatory Framework

In general, adjustment of status is governed by 8 U.S.C. § 1255 and its implementing regulations. The Cuban Refugee Adjustment Act of 1966, Pub. L. No. 89–732, 80 Stat. 1161 (1966) ("CRAA"), allows Cuban natives or citizens living in the United States who meet certain eligibility requirements to apply to become lawful permanent residents. The CRAA provides that a native of Cuba who has (i) been inspected and admitted or paroled into the United States after January 1, 1959; and (ii) has been physically present in the country for at least one year, may apply to have his or her status adjusted to that of a lawful permanent resident, subject to the discretion of the Attorney General. *Id*. § 1.

On June 4, 2025, President Trump issued Presidential Proclamation 10949, titled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. 24497 (June 10, 2025). Invoking §§ 212(f) and 215(a) the INA, 8 U.S.C. §§ 1182(f) and 1185(a), the Proclamation imposed restrictions, limitations, and exceptions on the entry of aliens from 19 "high-risk" countries. *Id.* at 24499. Specifically, it fully suspended the entry of immigrants and non-immigrants from 12 countries and partially restricted entry from another seven countries, subject to certain categorical exceptions and case-by-case waivers. *Id*. Cuba was one of the seven partially restricted countries. *Id*.

On December 2, 2025, the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), issued Policy Memorandum PM-602-0192, bearing the subject line, "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." ECF No. [10-13]. Policy

2

Memorandum PM-602-0192 directed USCIS personnel to immediately place an "adjudicative hold" on any pending immigration benefit requests filed by non-citizens from the same 19 countries affected by Presidential Proclamation 10949, regardless of entry date. *Id.* at 1. Policy Memorandum PM-602-0192 stated that the hold would "remain in effect until lifted by the USCIS Director through a subsequent memorandum." *Id.* at 2–3.

On January 1, 2026, USCIS issued a second Policy Memorandum, PM-602-0194, which bore the subject line, "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries," and stated that the guidance in PM-602-0192 remained in place. ECF No. [10-14] at 2. PM-602-0194 further explained that the "hold" on immigration benefit applications "allows a case to proceed through processing, up to a final adjudication"—that is, "the issuance of a final decision in a case, such as an approval, denial, or dismissal." *Id.* at 1 n.2.

On March 30, 2026, USCIS issued a public statement titled, "Update on USCIS' Strengthened Screening and Vetting." ECF No. [17-1]. In it, USCIS confirmed that it lifted the adjudicative hold for certain categories of individuals. *Id.* at 2. Cuban nationals were not listed among the groups for whom the adjudicative hold has been lifted. *Id*.

### B. Factual Background

Plaintiff, a native and citizen of Cuba, entered the United States on May 24, 2021. ECF No. [10] ¶ 39. On September 5, 2023, DHS issued Plaintiff a parole pursuant to INA § 212(d)(5), retroactive to June 22, 2021. *Id*. Plaintiff has resided in the United States continuously since May 24, 2021, and has no criminal history. *Id.* ¶ 41.

On December 22, 2023, Plaintiff submitted to USCIS a Form I-485 Application to Register Permanent Residence or Adjust Status. *Id.* ¶ 42. USCIS accepted jurisdiction over the Application and issued a receipt notice. *Id*. USCIS further informed Plaintiff that his previously captured

3

biometrics remained valid and would be reused for purposes of adjudicating the pending Form I-485 Application; Plaintiff would not be required to appear for a new biometrics appointment. *Id.* ¶ 43.

On April 10, 2024, Plaintiff submitted an inquiry to USCIS regarding the status of his pending adjustment. *Id.* ¶ 45. On April 26, 2024, USCIS responded, informing Plaintiff that his case was under active review by an immigration officer and that he should be receiving a decision or notice of further action shortly. *Id*. Since April 28, 2024, the case has been under "advisory review." *Id.* ¶ 46. USCIS "refuses to provide any reason or response to Plaintiff or his counsel as to what precisely is under review, or what is the legal issue delaying adjustment." *Id*.

On December 29, 2025, notwithstanding his pending adjustment Application, Plaintiff was detained by immigration authorities. *Id.* ¶ 47. Plaintiff sought and received a writ of habeas corpus in federal court requiring that he be given a pre-Notice to Appear bond hearing. *Id.* ¶ 48. On February 5, 2026, a custody redetermination pursuant to 8 C.F.R § 1236 was conducted before an immigration judge, and Plaintiff was granted minimum bond. *Id.* ¶ 49. Through today, "Defendants have refused to issue a Notice to Appear ('NTA'), and no charging document has been filed with the Immigration Court. Since no NTA has been filed, no removal proceedings are pending and no immigration judge presently has jurisdiction over Plaintiff's case." *Id.* ¶ 50.

Plaintiff's Form I-485 Application remains pending, and USCIS has not issued a final decision, nor has it identified an individual deficiency or commenced ongoing removal proceedings. *Id.* ¶ 64.

## C. Procedural Background

In December 2025, Plaintiff filed the instant action. ECF No. [1]. In February 2026, Plaintiff filed his Amended Complaint, asserting a violation of two provisions of the

Administrative Procedure Act, 5 U.S.C. § 555(b) and 706(1) ("APA") (Count I), which require federal agencies to conclude matters presented to them "within a reasonable time" and allow reviewing courts to compel agency action "unlawfully withheld." ECF No. [10] at 17. In the alternative, Plaintiff asserts a claim for violation of the same provisions of the APA, but on the basis that agency action, rather than being "unlawfully withheld," has been "unreasonably delayed" (Count II). *Id.* 20. Plaintiff also seeks a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants to adjudicate his Form I-485 Application (Count III). *Id.* ¶ 173. Plaintiff next seeks a declaratory judgment that "Defendants lack authority to withhold adjudication on the basis asserted"—that is, that the adjudicative hold is unlawful and exceeds statutory authority (Count IV). *Id.* ¶ 190. Finally, Plaintiff seeks declaratory and injunctive relief prohibiting Defendants from enforcing or relying upon the adjudicative hold as a basis to refuse adjudication of Plaintiff's Form I-485 Application on the basis that the hold represents *ultra vires* executive action and violates the U.S. Constitution's separation of powers (Count V). *Id.* at 25–26.

In March 2026, Defendants filed the instant Motion to Dismiss, claiming that pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), this Court lacks subject matter jurisdiction, and Plaintiff fails to state a claim for relief. ECF No. [12] at 2. In the alternative, "Defendant requests that this Court stay these proceedings in light of USCIS's recent adjudicative hold on certain applications due to national security and public safety concerns." *Id*. Plaintiff responds that, rather than challenging the *pace* of adjudication, his Amended Complaint challenges agency *inaction* in the form of a categorical prohibition on adjudication. ECF No. [13] at 1–2. Moreover, Plaintiff responds that no stay should be granted, as Defendants "ask[] this Court to stay this case pending guidance [USCIS] has already demonstrated it will not provide." *Id.* at 2. Defendants reply that the Court lacks jurisdiction under the APA and because Plaintiff has failed to establish

standing, and Plaintiff has failed to state a claim as there is no statute or regulation requiring that his application be adjudicated within a specific time frame; alternatively, Defendants argue a stay is warranted due to the national security concerns implicated by USCIS's policy memoranda. ECF No. [14].

Also in March 2026, Plaintiff filed his Motion for PI, seeking a preliminary injunction ordering Defendants to adjudicate his pending Form I-485 Application within 30 days. ECF No. [11] at 2, 19. Defendants respond that the Motion for PI should be denied, as Plaintiff has failed to establish standing, cannot show a substantial likelihood of success on the merits, cannot show irreparable injury in the absence of a preliminary injunction, and cannot show his threatened injury outweighs the damage the preliminary injunction would cause to Defendants; moreover, they argue the preliminary injunction would be adverse to the public interest. ECF No. [15]. Plaintiff replies that his Motion for PI should be granted as Defendants' response "directly contradicts their prior representations to this Court," Plaintiff has standing, Plaintiff is likely to succeed on the merits, and the remaining preliminary injunction factors favor Plaintiff. ECF No. [16].

Both motions are fully ripe for review.

## II.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501

F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quotation marks omitted); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.") (citation omitted)).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (S.D. Fla. 2023); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quoting *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (internal quotations omitted)). With regard to federal question jurisdiction, the district courts have "original jurisdiction

of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331; *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

### B. Federal Rule of Civil Procedure 12(b)(6)

When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531,

1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, the court may consider additional documents when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

**C. Stay**

To obtain a stay, a movant bears the burden of showing that the circumstances justify the court's exercise of its discretion to provide that relief. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). The four relevant factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quotation marks omitted). "The first two factors . . . are the most critical." *Id.* The last two factors "merge when the Government is the opposing party." *Id.* at 435.

**D. Preliminary Injunction**

A district court may grant a preliminary injunction only if the movant establishes the following: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the

movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018) (quotation marks omitted).

### III.   DISCUSSION

#### A.  Motion to Dismiss and/or to Stay

##### i.     Subject Matter Jurisdiction

###### I.     APA Claims (Counts I and II)

Defendants first argue that the Court lacks jurisdiction under the APA to evaluate the pace of adjudication as to Plaintiff's application for adjustment of status because no statute or regulation mandates a specific timetable for such adjudication. ECF No. [12] at 3. Specifically, Defendants argue that where "agency action is committed to agency discretion by law," judicial review is unavailable, and the CRAA "expressly commits the final grant of adjustment to the discretion of USCIS." *Id.* (citations omitted). Defendants assert that Plaintiff necessarily raises a challenge to the pace of adjudication, because the hold is not indefinite and does not prohibit adjudication. *Id.* at 4. Such a "pace" challenge is improper, because there is no statutory or regulation provision dictating how long it should take to adjudicate an application under the CRAA, and thus there is no "meaningful standard" by which the Court can judge the pace of adjudication. *Id.* at 5.

Plaintiff responds, first, that the Amended Complaint makes plain that this is not a pace challenge but a challenge to categorical agency inaction, which is not insulated from judicial review. ECF No. [13] at 2. Indeed, Plaintiff argues that Defendants' Motion to Dismiss makes this clear, as they admit that, at this point, adjudication is "prohibited" by executive action. *Id.* at 3. That is, Defendants' "own admission that adjudication is 'prohibited'—not merely slow— forecloses pace-challenge framing and confirms that this is the kind of unlawfully withheld agency action subject to judicial review under 5 U.S.C. § 706(1)." *Id.*

Second, Plaintiff responds that § 701(a)(2) does not bar judicial review. *Id.* While the discretion to grant or deny an adjustment on the merits is committed to the agency, the duty to adjudicate the application at all is not. *Id.* Indeed, nothing in the CRAA says that USCIS "may decline to process the application at all." *Id.* "The discretionary nature of the ultimate outcome does not eliminate the mandatory nature of the process leading to that outcome." *Id.* at 4.

Third, Plaintiff argues that Defendants' invocation of "judicially manageable standards" is inapt. *Id.* Here, "USCIS has accepted jurisdiction over a specific application filed by a specific applicant, accepted fees and biometrics, and then been directed by executive memorandum to halt the process." *Id.* There is a difference, Plaintiff argues, between "unreviewable enforcement discretion and reviewable agency failures to fulfill mandatory duties." *Id.* (citations omitted). And even if the Court were to search for "meaningful standards" by which to judge USCIS's actions, the standard is clear: "does the agency have a mandatory to adjudicate?" *Id.* at 5. Even under the unreasonable-delay framework, Courts have manageable standards available to them. *Id.* (citing *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)).

Defendants reply that this is a pace challenge, because USCIS is not prohibited from ever adjudicating his application, but is merely prohibited from doing so "at this time." ECF No. [14]

at 1. There is no indication that USCIS will be holding adjudication "indefinitely." *Id*. By contrast, the policy memoranda expressly state that the hold exists "pending a comprehensive review." *Id.* at 1–2. And no subject matter jurisdiction exists under the APA where a plaintiff challenges USCIS delays in adjudicating Form I-485 adjustment of status applications. *Id.* at 2 (citations omitted).

Under the APA, courts may "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1), except to the extent that "statutes preclude judicial review[.]" 5 U.S.C. § 701(a)(1). Although there is a "presumption favoring judicial review of administrative action[,]" *Kucana v. Holder*, 558 U.S. 233, 251 (2010), that presumption can be overcome with "clear and convincing evidence" of congressional intent to preclude judicial review. *Id.* at 252 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)). Defendants cite to one such jurisdiction-stripping provision in the APA, which states that there shall be no judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This means that federal courts are only empowered "to compel an agency to perform a ministerial or non-discretionary act." *Norton v Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The Supreme Court has counseled on multiple occasions that § 701(a)(2)'s scope is "narrow." *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 838 (1985). It precludes review only of action "traditionally left to agency discretion," *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993), and "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Department of Commerce v. New York*, 588 U.S. 752, 772 (2019).

The Court disagrees with Defendants that § 701(a)(2) precludes judicial review over Plaintiff's "unlawfully withheld" claim but agrees that it precludes review of Plaintiff's "unreasonable delay" claim. While the decision whether to adjust a Cuban national's status to that of a lawful permanent resident undoubtedly is committed to the "discretion" of the executive

branch, Pub. L. No. 89–732, 80 Stat. 1161 (1966), USCIS has a nondiscretionary statutory duty to adjudicate applications for lawful permanent resident status based on the CRAA and 5 U.S.C. § 555. That is, the APA expressly provides that agencies presented with a matter "shall proceed to conclude" it "within a reasonable time." 5 U.S.C. § 555. The operative word here is "shall," which signifies that the agency may not opt for inaction entirely. And the CRAA, reproduced as a note to 8 U.S.C. § 1255, expressly provides that it does not modify the Attorney General's duties under the INA. Pub. L. No. 89–732, 80 Stat. 1161 (1966).

Thus, to the extent Plaintiff alleges in Count I that agency action has literally refused to act—and to the extent Counts IV and V are predicated on withheld agency action—the Court finds that it possesses jurisdiction to review the matter. Indeed, several courts have found that the duty to act on an application and to adjudicate it is nondiscretionary. *See Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007) (finding that, with respect to an I-485 application, USCIS "has a non-discretionary duty to *act* on an application, a discretionary duty as to the *pace* of processing the application, and a non-discretionary duty to *adjudicate* an application."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 154 (D. Mass. June 26, 2007) ("[w]hile it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all."); *Joshua v. Jaddou*, No. JRR-24-00667, 2025 WL 449001, at *7 (D.Md. Feb. 10, 2025) ("[T]he duty to adjudicate a Form I-485 is non-discretionary." (quoting *Mokuolu v. Mayorkas*, No. RDB-24-817, 2024 WL 4783542, at *5 (D.Md. Oct. 1, 2024))). Courts have even found this to be the case within the context of these policy memoranda. *See, e.g.*, *Doe et al. v. Trump et al.*, No. 1:25-CV-13946-JEK, 2026 WL 1170971, at *11 (D. Mass. Apr. 30, 2026) ("[T]he application of the adjudicative hold policy to adjustment of status applications is not a matter committed to agency discretion.").

Importantly, this case is distinguishable from *Kanapuram v. Director, U.S. Citizenship & Immigration Services*, 131 F.4th 1302 (11th Cir. 2025), a visa retrogression case.. There, the Eleventh Circuit—aligning with several other Courts of Appeals—held that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of USCIS's decision to hold adjustment of status applications in abeyance until visa numbers become available. *Id.* at 1307; *see also Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025); *Geda v. USCIS*, 126 F.4th 835, 842 (3d Cir. 2024); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 1126 (2025); *Thigulla v. Jaddou*, 94 F.4th 770, 777 (8th Cir. 2024).

Visa retrogression, however, "stands on a different factual and legal footing than the adjudication hold implemented under" the Policy Memoranda at issue here. *Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026). In the visa retrogression context, adjustment of status applications are held in abeyance until a particular "condition precedent" has been met—namely, the availability of visa numbers. By contrast, the adjudicatory hold here is indefinite, with no specific condition precedent required to be satisfied.[1] ECF No. [10-13] at 2–3 ("This hold will remain in effect until lifted by the USCIS Director through a subsequent memorandum."); *see also Varniab*, 2026 WL 485490, at *7 ("Defendants have not identified the 'condition precedent' for the PM-0192 adjudication hold to be lifted, and no end point is apparent from the Policy Memorandum itself."). In other words, the polices at issue in *Kanapuram* were a clear exercise of discretion compelled by visa limits set by Congress in the statutory scheme. By

---

[1] Indeed, the adjudicative hold here appears all the more indefinite when one considers that USCIS has exceeded its own timeline *twice*. That is, in PM-602-0192, USCIS indicated that it would, "[w]ithin 90 days of issuance of this memorandum, . . . issue operational guidance." ECF No. [10-13] at 3. That 90 days expired on March 2, 2026. And in PM-602-0194, USCIS again indicated that it would, "[w]ithin 90 days of this memorandum issuance, . . . issue operational guidance." ECF No. [10-14] at 5. That 90-day period lapsed on April 1, 2026.

contrast, nothing in the INA, CRAA, or APA specifies that USCIS has discretion to cease adjudicating adjustment of status applications altogether for applicants from particular countries.

However, the Court finds that it lacks jurisdiction over Plaintiff's "unreasonable delay" claim, pled in the alternative as Count II. Congress has not provided a timeframe in which immigration applications like Plaintiff's are required to be adjudicated. At most, Congress has indicated in 8 U.S.C. § 1571(b) that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But the Eleventh Circuit has made clear that "should" is "permissive, rather than mandatory, language." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). The Fifth Circuit explained it well, stating that 1571(b)'s "sense of Congress" language "merely expresses Congress's sense of the adjudicative process," and does not indicate that USCIS has a "plainly prescribed" duty to adjudicate a petition within any specific time frame. *See Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010), *vacated on other grounds by Bian v. Clinton*, 2010 WL 3633770 (5th Cir. Sept. 16, 2010).

The Court is far from alone in this conclusion. Courts in this Circuit are clear that the *pace* of adjudication is discretionary, and courts are without jurisdiction to hear claims arising from a delay in adjudication. *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (holding that district courts are without jurisdiction to consider complaints regarding "the pace at which immigration decisions are made" in a case involving I-485 applications); *Eldeeb*, 619 F. Supp. 2d at 1205 (M.D. Fla. 2007) (finding that, with respect to an I-485 application, USCIS "a discretionary duty as to the *pace* of processing the application"); *Orabi v. Chertoff*, 562 F. Supp. 2d 1377, 1380 (N.D. Ga. 2007) (finding court did not have jurisdiction over claim of delayed consideration of adjustment of status application); *Torres v. Chertoff*, No. 1:07CV01649 WSD, 2007 WL 4261742,

at *5 (N.D. Ga. Nov. 30, 2007) (finding APA "expressly preclude[ed] jurisdiction" over complaint regarding pace of adjustment of status application consideration). As such, because the pace of adjudication is discretionary, the Court is without jurisdiction to address Plaintiff's "unreasonably delay" claim, and Count II must be dismissed.

## I.      Mandamus Claim (Count III)

Though Defendants do not advance specific arguments regarding the Court's jurisdiction to hear Plaintiff's mandamus claim, the Court is obliged to *sua sponte* determine its own jurisdiction. *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) ("Federal courts 'are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking.'" (quoting *Galindo–Del Valle v. Att'y Gen.*, 213 F.3d 594, 599 (11th Cir. 2000))).

The Mandamus Act invests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is "an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (citing *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969)). "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) 'no other adequate remedy is available.'" *Cash*, 327 F.3d at 1258 (quoting *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)) (alterations incorporated). The party seeking mandamus bears the burden of demonstrating that the party's right to the writ is "clear and indisputable." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1036–37 (11th Cir. 2021). "[A] writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Cash*, 327 F.3d at 1258 (quoting *Heckler v. Ringer*, 466 U.S.

16

602, 616 (1984)). Even if all three elements are met, the decision is "granted only in the exercise of sound discretion." *Whitehouse v. Illinois Central R. Co.*, 349 U.S. 366, 373 (1955).

Here, the Court has already established that, while Defendants have a nondiscretionary duty to *adjudicate* Plaintiff's application, they possess a discretionary duty regarding the *pace* of adjudication. "The first and second factors required for the entry of a writ of mandamus are related in this case, where the question of Defendants' having a clear duty determines in large part whether Plaintiff clearly has a right to the relief sought." *Osechas Lopez v. Mayorkas*, No. 22-CIV-21733, 649 F.Supp.3d 1278, 1284 (S.D. Fla. Jan. 10, 2023) (citations omitted). As such, mandamus relief is necessarily unavailable based on any delay in processing, as Defendants do not have a clear duty to act on Plaintiff's I-485 Application within a certain timeframe. *See Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 420 (11th Cir. 2009) (affirming the district court's holding that the Mandamus Act provided no basis for jurisdiction where the action complained of was discretionary); *Hasan v. Wolf*, 550 F. Supp. 3d 1342, 1349 (N.D. Ga. 2021) (holding that, with respect to USCIS, absent "a clear duty to act," a district court lacks jurisdiction under the Mandamus Act "to review the pace at which USCIS adjudicates [a p]laintiff's [a]pplication").

And with respect to Plaintiff's "unlawfully withheld" claim, the Court is without jurisdiction to issue a writ of mandamus because Plaintiff has another adequate remedy available—namely, his APA claim in Count I based on USCIS allegedly refusing to adjudicate his application altogether. *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) ("The availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus."). Therefore, Plaintiff's mandamus claim (Count III) must be dismissed for lack of subject matter jurisdiction.

## II.      Standing

Defendants argue the Court lacks jurisdiction because Plaintiff has failed to establish standing. ECF No. [12] at 5. Specifically, Plaintiff cannot show that his injury is likely to be redressed by the relief requested, because the policy memoranda at issue "effectively prevent[] USCIS from adjudicating Plaintiff's Application at this time." *Id.* at 6. That is, Plaintiff cannot satisfy the redressability element of standing because the current hold is a discretionary executive action, and "the Court lacks jurisdiction to compel any action to the contrary." *Id.*

Plaintiff responds that Defendants' standing argument is circular. That is, "[a] plaintiff challenging agency action as unlawful cannot be denied standing on the ground that the unlawful action itself prevents the agency from providing relief." ECF No. [13] at 5. Here, Plaintiff challenges the legality of PM-602-0192 and PM-602-0194 as applied to applicants like himself. "If the memos are unlawful, enjoining them directly and completely redresses Plaintiff's injury." *Id.* That satisfies the redressability element. *Id.* Moreover, Plaintiff argues that the policy memoranda are not unreviewable discretionary executive action. *Id.* at 6. Presidential Proclamation 10949 concerns *entry* of foreign nationals, and Plaintiff is already in the United States and is not seeking entry. The policy memoranda, Plaintiff argues, "reach beyond § 1182(f)'s entry-restriction authority and into the adjudicative process—a domain governed by statute and regulation, not executive proclamation." *Id.*

Defendants reply that Plaintiff has failed to establish standing, as there is no jurisdiction over claims related to the pace of adjudication of applications (as such claims are discretionary), so there is no possibility to redress Plaintiff's alleged injury. ECF No. [14] at 3–4.

Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const Art. III § 2; *see Stalley ex rel. U.S. v. Orlando Regional Healthcare*

18

*System, Inc.*, 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements."). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004). "To have standing, the plaintiff[] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020).

The Court finds that Plaintiff has standing because the Court has jurisdiction to consider Plaintiff's "unlawfully withheld" claims, so relief "is available through a court order invalidating the [policy memoranda] on one or more of the grounds advanced by Plaintiff[]." *Abdulraheemzai, et al., v. Noem, et al.*, No. 25-CV-05098-JST, 2026 WL 1113722, at *5 (N.D. Cal. Apr. 24, 2026) (citing *Ghahrisarabi v. Noem*, No. 25-CV-08546-KAW, 2026 WL 194738, at *1 (N.D. Cal. Jan. 26, 2026)).

### ii.    Merits of the Claims

#### I.    APA Claim (Count I)

Defendants argue that "Plaintiff cannot establish that USCIS has failed to adjudicate his application for adjustment of status within a required time frame under statute or regulation." ECF No. [12] at 7. Moreover, Defendants contend that "the plain language of relevant federal statutes, in the absence of congressionally mandated timelines, and the national security considerations

implicated by the adjudication process all support that the pace of adjudication is discretionary." *Id.* (citations omitted). Even if Plaintiff could show unreasonable delay, Defendants argue that Plaintiff has not alleged sufficient prejudice to state a claim under 5 U.S.C. § 706, as he is no longer in custody. *Id.*

Plaintiff responds that as a result of "the agency's acceptance of jurisdiction, the applicant's statutory eligibility under the [CRAA] and the APA's baseline requirement that agencies conclude matters presented to them within a reasonable time," USCIS has a mandatory duty to adjudicate and cannot simply stop. ECF No. [13] at 6–7. "Plaintiff does not argue USCIS is moving too slowly. He argues USCIS has been affirmatively prohibited from ever reaching a decision absent further guidance—guidance that Defendants' own memorandum promised within ninety days and have not provided." *Id.* at 7. Moreover, Plaintiff argues that he has suffered substantial and ongoing prejudice. *Id.* Aside from the ongoing bond conditions including electronic monitoring, Plaintiff faces the loss of "every administrative forum available to him while parallel enforcement proceedings remain live." *Id.* at 7–8.

Defendants reiterate their original arguments in their Reply. ECF No. [14] at 5–6.

The Court agrees with Plaintiff and finds that dismissal is not warranted for largely the same reasons as in its subject matter jurisdiction analysis above. As described above, the APA provides that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). The Court—and several other courts in this circuit to consider the issue—have held that this confers on USCIS a non-discretionary duty to adjudicate applications for adjustment of status. *See Choudhry v. Chertoff,* No. 1:07-CV-426-CAP, 2007 WL 9706374, at *3 (N.D. Ga. Mar. 12, 2007) ("Relying on § 6 of

the APA, the majority of district courts have concluded that they do have subject matter jurisdiction to compel the government to adjudicate an application for adjustment of status."); *Eldeeb*, 619 F. Supp. 2d at 1205 (finding that, with respect to an I-485 application, USCIS has "a non-discretionary duty to *adjudicate* an application."); *Tang*, 493 F. Supp. 2d at 154 ("While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all."); *Joshua*, 2025 WL 449001, at *7 ("[T]he duty to adjudicate a Form I-485 is non-discretionary." (quoting *Mokuolu*, 2024 WL 4783542, at *5 (D. Md. Oct. 1, 2024))); *Poliakova v. Gonzalez*, No. 08-20143-CIV, 2008 WL 11331851, at *3 (S.D. Fla. Apr. 7, 2008) (distinguishing "a situation where [US]CIS is refusing to take any action to process Plaintiff's [I-485] Application").

Plaintiff has adequately alleged that USCIS is refusing to adjudicate his application at all, pointing to the specific policy memoranda that dictate this result. As such, the Court finds that Count I states a claim, and Defendants' Motion to Dismiss is denied as to Count I.

## II.    Declaratory Judgment (Count IV) and *Ultra Vires* Executive Action (Count V)

Defendants do not raise any independent arguments regarding Counts IV and V of the Complaint. As such, the Court declines to dismiss these counts as this juncture.

### iii.    Motion for Stay

Defendants argue that, in the alternative, the Court should stay this case. ECF No. [12] at 7. Defendants argue that Plaintiff will not be prejudiced, and a stay is warranted "considering the national security concerns which prompted the Executive Branch's hold on adjudications of applications like that of Plaintiff's." *Id.* at 8. Thus, Defendants "request a stay of these proceedings until the hold is lifted or further guidance is provided by USCIS regarding the adjudication hold." *Id.*

Plaintiff responds, first, that the 90-day guidance deadline has already expired, meaning "the operational guidance they ask the Court to await was due *before* this [Motion to Dismiss] was filed." ECF No. [13] at 8. The record, Plaintiff points out, demonstrates that USCIS will not provide guidance on any specified timeline, so the stay "asks the Court to wait indefinitely for something [that] . . . may never be satisfied." *Id.* at 9. Furthermore, a stay would prejudice Plaintiff, would not simplify the issues, and would not reduce the litigation burden. *Id.* at 9–10. Finally, Plaintiff argues that "deference to executive judgment on matters of national security is not judicial abdication in the face of a statutory APA claim," and courts "routinely review whether executive action in the immigration context complies with statutory authority." *Id.* at 10. National security concerns ring hollow in this case, insofar as Plaintiff has no criminal record of any kind. *Id.* at 10–11.

Defendants reiterate their national security arguments in their Reply. ECF No. [14] at 6–7. Further, Defendants argue Plaintiff would suffer no prejudice in the event of a stay, because his habeas petition is still being litigated. *Id.* at 7. Moreover, "a stay simplifies a major issue, the hold Plaintiff continues to place at issue in this case." *Id*. Finally, Defendants argue that Plaintiff has caused the substantial litigation to date. *Id*.

As noted above, the four factors relevant to assessing the appropriateness of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. 418, 434 (quotation marks omitted). Because "[t]here is substantial overlap between these and the factors governing preliminary injunctions," *id.* (citations omitted), the Court resolves the question of a stay through its preliminary injunction analysis.

22

### B. Motion for PI

Plaintiff moves for a preliminary injunction "ordering Defendants to adjudicate [Plaintiff's] pending Form I-485." ECF No. [11] at 2. Plaintiff argues, first, that the Court has jurisdiction to compel adjudication of the Form I-485 Application pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii) and 28 U.S.C. § 1331. *Id.* at 6–7. Next, turning to the preliminary injunction factors, Plaintiff argues he is likely to succeed on the merits, as Defendants have unlawfully withheld agency action in violation of 5 U.S.C. § 706(1). *Id.* at 8. Moreover, Plaintiff argues the policy memoranda are arbitrary and capricious under 5 U.S.C. § 706(2)(A). *Id*. They constitute final agency action, lack a rational basis, "fail to account for reliance interests of applicants who filed before the policy issued," and contemplated additional guidance within 90 days, which never came. *Id*. at 8–11. Finally, Plaintiff argues the policy memoranda exceed statutory authority and violate the separation of powers—that is, they are *ultra vires*—because Congress did not delegate to the Executive Branch the power to suspend the CRAA's adjudicative process. *Id.* at 11.[2]

Plaintiff next argues that he will suffer irreparable harm absent injunctive relief, as USCIS refuses to adjudicate at the same time that the Government prosecutes parallel enforcement proceedings. *Id.* at 13. That is, Plaintiff is currently on pre-Notice to Appear ("NTA") bond, "subject to an ankle monitor and continuous government surveillance." *Id*. Meanwhile, the Government seeks to reinstate a removal order against him. *Id.* at 13–14. "If granted, Plaintiff will be removed while a fully compliant C[R]AA application sits frozen in the exclusive jurisdiction of an agency that has declared it cannot act." *Id.* at 14. This pre-adjudication removal would result in irreparable damage. *Id*. Moreover, the Government has created a "jurisdictional void,"

---

[2] Plaintiff also argues that mandamus relief is independently available. ECF No. [11] at 12–13. Because the Court has already found that mandamus relief is not available and has dismissed Count III, the Court does not address this argument.

engendering further harm upon Plaintiff: "USCIS will not adjudicate. No NTA vests jurisdiction in an immigration judge. No administrative appeal lies from a non-decision. No other forum exists." *Id*. The family unity harm occasioned by the uncertainty of Plaintiff's status is an ongoing and non-compensable harm. *Id*. at 14–15.

Finally, Plaintiff argues the balance of equities and public interest favor relief. *Id.* at 15. Plaintiff has endured detention, emergency habeas litigation, and release on pre-NTA bond subject to supervision. *Id*. He faces the prospect of removal if the Government's Rule 59(e) motion is granted. *Id*. He cannot plan, travel, or broadly live with the rights associated with lawful permanent residence. *Id*. By contrast, Defendants face only an order requiring USCIS to adjudicate a single pending Form I-485 Application. *Id*. There are no national security concerns, as the Government has taken all the preliminary steps to process the Application and has identified no concern; all that is left is final adjudication, which imposes no additional burden on the Government's national security review process. *Id.* at 16. Moreover, the public interest favors relief, as "Defendants have identified no security concern specific to Plaintiff," and there is no public interest in the perpetuation of unlawful agency action. *Id*. at 16–17.

Defendants respond that Plaintiff cannot show a likelihood of success on the merits. ECF No. [15] at 5. Defendants argue that the policy memoranda do not "preclude [Plaintiff's] eligibility for the benefit, but simply require[] a more rigorous vetting of applicants from high-risk countries to ensure national security." *Id*.[3] Moreover, Defendants argue Plaintiff is unlikely to succeed on his declaratory judgment claim (Count IV), because it does not establish an independent claim and

---

[3] Defendants also respond that Plaintiff cannot establish standing. ECF No. [15] at 3–4. Because the Court has already addressed standing above, the Court does not address this argument. Similarly, Defendants devote significant space to showing no likelihood of success on Plaintiff's Unreasonable Delay claim (Count II) and Mandamus claim (Count III). *Id.* at 5–10. Because the Court has already dismissed these claims, the Court does not address any argument directed toward them.

therefore Plaintiff will fail on this Count. *Id.* at 10–11. Finally, Defendants argue Plaintiff is unlikely to succeed on his *ultra vires* and violation of separation of powers claim (Count V). *Id.* at 11. This is because the policy memoranda implement the President's suspension and restriction of entry of certain foreign nationals. *Id.*

Defendants next argue that Plaintiff cannot show irreparable injury in his claim that he "may" be subject to removal proceedings prior to adjudication of his I-485 Application—a possibility is not a *likelihood* of irreparable injury. *Id.* at 12. Furthermore, Defendants argue that the threatened injury to Plaintiff does not outweigh the damage an injunction would cause Defendants, as an injunction would "prevent[] Defendants from thoroughly investigating applicants, including Plaintiff, for the purposes of ensuring national security and public safety." *Id.*

Finally, Defendants argue an injunction would be adverse to the public interest, as it would "run counter to the broader purpose of the policy memoranda, which is to ensure screening and vetting prioritize the safety of the American people." *Id.* at 13.

### i. Likelihood of Success on the Merits

Under section 706(1) of the APA, a plaintiff must identify a "*discrete* agency action" that the agency is legally "*required* to take." *Norton*, 542 U.S. at 64 (emphasis in original). As discussed above, the CRAA provides that the status of certain Cuban nationals may be adjusted "to that of an alien lawfully admitted for permanent residence" in the "discretion" of the Attorney General. Pub. L. No. 89–732, 80 Stat. 1161 (1966). Upon approval of such an application, the Attorney General "*shall* create a record of the alien's admission for permanent residence." *Id.* (emphasis added). Moreover, the APA expressly provides that agencies presented with a matter "shall proceed to conclude" it "within a reasonable time." 5 U.S.C. § 555.

Courts have concluded, in analogous contexts, that statutory directives such as these place upon USCIS a non-discretionary duty to act on Form I-485 applications for adjustment of status. *See Choudhry*, 2007 WL 9706374, at *3 ("Relying on § 6 of the APA, the majority of district courts have concluded that they do have subject matter jurisdiction to compel the government to adjudicate an application for adjustment of status."); *Eldeeb*, 619 F. Supp. 2d at 1205 (finding that, with respect to an I-485 application, USCIS has "a non-discretionary duty to *adjudicate* an application."); *Tang*, 493 F. Supp. 2d at 154 ("While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all."); *Joshua*, 2025 WL 449001, at *7 ("[T]he duty to adjudicate a Form I-485 is non-discretionary." (quoting *Mokuolu*, 2024 WL 4783542, at *5 (D. Md. Oct. 1, 2024))); *Poliakova*, 2008 WL 11331851, at *3 (distinguishing "a situation where [US]CIS is refusing to take any action to process Plaintiff's [I-485] Application").

Plaintiff has established that Defendants refuse to act on his Form I-485 Application. Indeed, though Defendants are careful in their choice of words, they admit that the policy memoranda "prohibit adjudication at this time" and that, "[a]t this point in time, adjudication by USCIS is prohibited by Executive action so there is no relief available to Plaintiff." ECF No. [12] at 6, 8–9. In effect, as of right now, Defendants admit that they are not adjudicating Plaintiff's application; they are withholding an action that they are required to take. Though Defendants claim this is merely a dispute about the timeline for adjudication, the policy memoranda do not merely delay adjudication of Form I-485 applications—they *foreclose* such adjudication indefinitely. And while "Defendants have discretion as to whether to grant or deny particular applications for immigration benefits, they do not have discretion to indefinitely and categorically delay or withhold adjudication of such applications." *Varniab*, 2026 WL 485490, at *12 (citation omitted).

For this reason, the Court finds Plaintiff is likely to succeed on his Unlawful Withholding claim (Count I).

### ii.   Irreparable Harm

To satisfy the irreparable harm factor, a plaintiff must demonstrate more than a mere "possibility" of harm; rather, the plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Importantly, an injury is "irreparable" only if it cannot be remedied monetarily. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)

The Court finds that Plaintiff has presented evidence of irreparable harm he will suffer if his Application remains unadjudicated. *See* ECF No. [11] at 14–15. Plaintiff points out that he remains subject to an ankle monitor and continuous Government surveillance. *Id.* at 15. Furthermore,

> [h]e lives each day without the stability, security, and legal rights that lawful permanent residence under the C[R]AA would confer. He cannot travel. He cannot exercise the full range of rights available to permanent residents. He cannot petition for family members. He cannot plan for a future in the country where he has lawfully resided for nearly five years.

*Id.* These harms have widely been recognized as injuries of an irreparable sort. *Varniab*, 2026 WL 485490, at *23 ("These harms include inability to travel to visit family, inability to make basic life decisions, and significant emotional strain."); *Bowser v. Noem*, No. 26-CV-10382-AK, 2026 WL 555624, at *9 (D. Mass. Feb. 27, 2026) (recognizing "inability to travel to visit family" as an irreparable harm (citations omitted)); *Young v. Trump*, 506 F.Supp.3d 921, 939 (N.D. Cal. 2020) ("[F]amily separations and the resulting emotional harm can constitute irreparable hardship for purposes of a preliminary injunction."); *Milligan v. Pompeo*, 502 F.Supp.3d 302, 321 (D.D.C.

27

2020) ("Separation from family members is an important irreparable harm factor." (citation omitted)); *Nio v. U.S. Dep't of Homeland Sec.*, 270 F.Supp.3d 49, 62 (D.D.C. 2017) (finding irreparable harm where, due to hold on military-related naturalization applications "until all enhanced [Department of Defense] security checks are completed," "plaintiffs are forced to live in uncertainty about the legality of their immigration status, and they are prevented from ordering their day-to-day affairs or from making future plans, including travel abroad to see family members").[4] Thus, the Court finds that Plaintiff has shown irreparable injury.

### iii.     Balance of Equities and Public Interest

When the Government is the nonmoving party, the balance-of-equities and public interest factors merge. *Nken*, 556 U.S. at 435. As discussed above, the harm to Plaintiff is concrete and likely. On the other side of the ledger, Defendants have not raised a viable countervailing harm. They contend that to compel them to adjudicate Plaintiff's application would prevent them "from thoroughly investigating applicants, including Plaintiff, for the purposes of ensuring national security and public safety." ECF No. [15] at 12. It would impede the "screening and vetting" needed to ensure "the safety of the American people." *Id.* at 13.

Defendants have presented no evidence that requiring adjudication of Plaintiff's Application would impede their national security processes. They have "presented no evidence that [Plaintiff] himself presents a national security risk or has provided the kind of suspect documentation meriting more stringent review, so further delaying adjudication of his Form I-[485] cannot be said to serve the national security interests behind the [policy memoranda]." *Karimi v. Mullin*, No. 5:26-CV-5049, 2026 WL 1103448, at *11 (W.D. Ark. Apr. 23, 2026).

---

[4] Plaintiff also emphasizes the uncertainty surrounding the Government's parallel enforcement proceedings, specifically referencing a Rule 59(e) motion in another case "seeking to reinstate an expedited removal order." ECF No. [11] at 5, 13, 15. Since the filing of Plaintiff's Motion for PI, the Rule 59(e) motion has been denied. ECF No. [18]. Thus, the Court does not address this factor in discussing irreparable harm.

Indeed, the record reflects that USCIS has already completed all preliminary processing of Plaintiff's Application and identified no deficiency. ECF No. [16] at 15; *see also Varniab*, 2026 WL 485490, at *14 ("Defendants' invocation of national security concerns is even less salient in the context of Plaintiff[] in this case, who ha[s] been living and working in the United States since 202[1] and about whom Defendants have identified no specific national security concerns."); *Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1256-57 (W.D. Wash. 2008) ("If [Plaintiff] presents a threat to national security and public safety, the Government does not ameliorate that threat by delaying a decision on his I-485 application.").

Moreover, the preliminary injunction Plaintiff seeks is limited in scope, addressing only his Application and requiring no broader commentary on the policy memoranda. Thus, any burden on the Government is slight compared to the harm faced by Plaintiff upon USCIS's continued withholding of a decision.  As to the public interest, "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009).[5]

For all these reasons, the Court finds that a preliminary injunction is warranted, and a stay is unjustified.

### IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss, **ECF No. [12]**, is **GRANTED IN PART AND DENIED IN PART**. Counts II and III are dismissed.

---

[5] Because the Court finds a preliminary injunction warranted on the basis of Plaintiff's Unlawful Withholding claim (Count I), it does not address Plaintiff's Declaratory Judgment (Count IV) and *Ultra Vires* Executive Action (Count V) claims.

2. Plaintiff's Motion for PI, **ECF No. [11]**, is **GRANTED IN PART AND DENIED IN PART**.

3. Defendants and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them are hereby **PRELIMINARILY ENJOINED** from withholding adjudication of Plaintiff's Form I-485, Application to Register Permanent Residence or Adjust Status, based solely on his nationality pursuant to the adjudication hold policy described in Policy Memoranda PM-602-0192 and PM-602-0194 or any internal policy of USCIS operating to the same effect.

4. The Government and USCIS shall adjudicate Plaintiff's I-485 Application in the ordinary course.

5. Counsel for Defendants must provide written notice of this Order to all Defendants **within 3 days of the date of this Order**. Defendants must file a copy of the notice on the docket at the same time.

6. The Court finds that a bond is not required under Federal Rule of Civil Procedure 65(c) because Defendants did not request it or provide evidence that they are likely to suffer damages from the injunction.

7. The Clerk shall **ADMINISTRATIVELY CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 19, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

30

Case No. 25-cv-25646-BLOOM/Elfenbein

Copies to:
Counsel of Record